**UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **David Rolan Wartell,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**Equifax Information Services, LLC, and First BanCorp. (d/b/a First Bank of Puerto Rico),**<br><br>**Defendants.** | **Civil Action No.** |

## COMPLAINT AND JURY DEMAND

### Preliminary Statement

1. This is a consumer protection action brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. (the "FCRA"), arising from a particularly egregious and persistent pattern of unlawful credit reporting.

2. Defendants Equifax Information Services, LLC ("Equifax") and First BanCorp. (d/b/a First Bank of Puerto Rico) ("First Bank") have repeatedly failed Plaintiff David Rolan Wartell by continuing to report an auto lease that was financed using First Bank which was the responsibility of his ex-wife, while the vehicle was in her possession as well.

3. Despite Mr. Wartell's detailed disputes, supported by documentary proof, both Defendants have adamantly refused to correct his credit reports.

4. Furthermore, this First Bank account was previously deleted from Mr. Wartell's credit report and reinserted without any prior notification. The Defendants' willful indifference has caused Mr. Wartell real and ongoing harm to his creditworthiness, his reputation, and his peace of mind.

5. Mr. Wartell brings this action to hold Defendants accountable, to obtain redress for the harm they have caused, and to enforce the consumer protections that Congress specifically enacted to prevent exactly this kind of damage.

**Jurisdiction and Venue**

6. Jurisdiction of this Court arises under 15 U.S.C. § 1681p, and 28 U.S.C. §1331, 1337. Jurisdiction over Plaintiff's state-law claim against First Bank arises under 28 U.S.C. § 1367(a) because that claim forms part of the same case or controversy as Plaintiff's FCRA claims.

7. This Court has personal jurisdiction over First Bank. In or about September 2019, Plaintiff and First Bank entered into a written settlement agreement (the "Agreement") resolving Plaintiff's claims against First Bank in his prior action in this Court, Wartell v. Trans Union, LLC, et al., No. 2:19-cv-01309-JHS (E.D. Pa.). In the Agreement, First Bank expressly consented to the personal jurisdiction and venue of the United States District Court for the Eastern District of Pennsylvania to adjudicate any claim or dispute arising from or reasonably related to the Agreement. This action arises from and is reasonably related to the Agreement because it concerns First Bank's reporting of the very account that the Agreement required First Bank to cause to be deleted and no longer reported in connection with Plaintiff's credit report.

8. Venue lies properly in this district pursuant to 28 U.S.C. §§ 1391(b), because Equifax is subject to personal jurisdiction in this District with respect to this action and therefore resides in this District for venue purposes. First Bank has additionally consented in the Agreement to venue in this District and has thereby waived any objection to venue here.

**Parties**

9. Plaintiff David Rolan Wartell ("Mr. Wartell" or "Plaintiff") is an adult individual who resides in Bertram, TX.

10. Defendant Equifax is a business entity that is registered to do business in the Commonwealth of Pennsylvania and regularly conducts business in the Eastern District of Pennsylvania, with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, GA 30309. At times Equifax is referred to as the "Credit Reporting Agency Defendant" or the "CRA Defendant".

11. Defendant First Bank is a business entity with a principal place of business located at 1519 Ponce de León Avenue, Stop 23, Santurce, San Juan, Puerto Rico 00908. First Bank is the party to the Agreement described above and has consented to the jurisdiction and venue of this Court.

12. First Bank is a "furnisher" as defined in 12 CFR 1022.41 as it regularly provides information relating to consumers to one or more Consumer Reporting Agencies ("CRAs") for inclusion in a consumer report.

## Factual Allegations

### Congress Enacted the FCRA to Protect Consumers Like Mr. Wartell

13. The FCRA was Congress's direct response to the devastating consequences that inaccurate credit reporting inflicts on ordinary Americans. As Congress expressly found – "The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." See 15 U.S.C. § 1681(a)(1).

14. Congress recognized that the rise of computerized data systems posed an acute threat to individual consumers: that a person's life and character could be reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can ruin a reputation

without cause, and make a person unemployable or uninsurable, as well as deny an individual the opportunity to obtain credit (or obtain credit at reasonable rates), a necessity in today's ever increasing costs of living requirements. See Bryant v. TRW, Inc., 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

15. To prevent such harm, the FCRA imposes a "maximum possible accuracy" standard on CRAs and requires that they have reasonable policies and procedures in place to prevent inaccurate credit reporting. 15 U.S.C. § 1681e(b). The FCRA further requires that CRAs, upon receiving a consumer dispute, conduct a reasonable reinvestigation and correct or delete inaccurate information within 30 days. See 15 U.S.C. § 1681i(a).

16. The FCRA separately requires furnishers of information, upon receiving notice of a dispute, to conduct a reasonable investigation, review all relevant information, report accurate results to the CRAs, and modify or delete any information found to be inaccurate or unverifiable. 15 U.S.C. § 1681s-2(b).

17. Both Equifax and First Bank failed these obligations completely.

**The Inaccurate Reporting Has Been Corrected Before — And Wrongly Resumed**

18. In or about 2018, Mr. Wartell and his ex-wife entered into a Divorce Judgment Agreement ("Divorce Agreement") and Mutual Consent Divorce Petition ("Divorce Petition") that considered the First Bank account the responsibility of Mr. Wartell's ex-wife. Additionally, Mr. Wartell's ex-wife kept possession of the vehicle that was leased and financed through First Bank.

19. Despite the Divorce Agreement and Divorce Petition, Defendants reported the First Bank account with no notation of the Divorce Agreement or Divorce Petition and Plaintiff's disputes were not noted. In 2019, Plaintiff filed a lawsuit regarding this issue and resolved the case with both Equifax and First Bank. Under the Agreement, First Bank agreed to notify Experian

Information Solutions, Inc. ("Experian"), Equifax and Trans Union, LLC ("Trans Union") so that the First Bank account would be deleted and no longer reported in connection with Plaintiff's credit report. The First Bank account was then removed from Plaintiff's credit reports. In or about March 2026, without notice or warning, the First Bank account was reinserted on Mr. Wartell's credit report. Once again, the First Bank account was reinserted with no notation that it had been disputed, the responsibility of Mr. Wartell's ex-wife, or any mention of the Divorce Agreement or Divorce Petition.

**Mr. Wartell's Disputes Were Clear, Well-Documented, And Ignored**

20. Mr. Wartell disputed the First Bank reporting with Equifax on or about April 16, 2026. In the dispute, Mr. Wartell requested that it be deleted. The First Bank account was not corrected.

21. Mr. Wartell again disputed the First Bank account reporting with Equifax in writing by letter dated April 30, 2026. His dispute was comprehensive. It included a detailed explanation confirming that he has no financial responsibility on the account, that the account was previously removed pursuant to a dispute by him and was supported by the following documentation: (a) Mr. Wartell's driver license; (b) Social Security card; (c) the Divorce Agreement; and (d) the Divorce Petition.

22. Mr. Wartell's dispute letter specifically requested that the First Bank account be deleted in its entirety.

23. Equifax responded by letter dated May 6, 2026, stating that his address was updated and failed to mention anything about the First Bank account.

24. By letter dated May 7, 2026, Equifax stated that it was closing the dispute dated April 30, 2026, as there was already a dispute in progress on the account.

25. By separate letter dated May 7, 2026, Equifax responded to Mr. Wartell's dispute dated April 16, 2026, stating that its investigation concluded that the account belongs to Mr. Wartell, without addressing that the account had previously been deleted and had been reinserted. Additionally, the account did not note that it was disputed by Plaintiff.

26. Mr. Wartell again disputed the First Bank account reporting with Equifax in writing by letter dated May 22, 2026. His dispute was comprehensive. It included a detailed explanation confirming that he has no financial responsibility on the account, that the account was previously removed pursuant to a dispute by him and was supported by the following documentation: (a) Mr. Wartell's driver license; (b) Social Security card; (c) the Divorce Agreement; and (d) the Divorce Petition.

27. Mr. Wartell's dispute letter specifically requested that the First Bank account be deleted in its entirety.

28. Equifax responded by letter dated June 18, 2026, again stating that its investigation concluded that the account belongs to Mr. Wartell, and again without addressing the prior deletion and reinsertion of the account. Additionally, the account did not include any information reflecting that it was disputed by Plaintiff.

29. Once again, Equifax's investigation failed to respond to Plaintiff's assertion that the First Bank account was reinserted in violation of the FCRA.

30. On September 16, 2026, Plaintiff, through counsel, sent written notice to First Bank's designated counsel in the manner provided for in the Agreement. The notice advised First Bank that the First Bank account had been reinserted on Plaintiff's Equifax credit report and had been verified by First Bank in response to Plaintiff's disputes, demanded that First Bank cause the First Bank account to be deleted and provide written confirmation that it had done so, and afforded

First Bank thirty (30) days to take corrective action.

31. More than thirty (30) days have elapsed since Plaintiff's notice. First Bank did not respond to the notice, did not cause the First Bank account to be deleted, and the First Bank account continues to be reported on Plaintiff's Equifax credit report.

32. No reasonable review of the documentation provided could have resulted in the derogatory information being verified as accurate. The FCRA requires more than a rubber stamp by a CRA of the information it receives from a furnisher.

**Defendants Conducted No Reasonable Investigation**

33. Mr. Wartell's disputes triggered mandatory reinvestigation obligations under the FCRA for both Equifax and First Bank. 15 U.S.C. §§ 1681i(a), 1681s-2(b). Both failed those obligations.

34. In practice, CRAs like Equifax typically investigate consumer disputes not by independently reviewing documentation, but by sending an automated consumer dispute verification request to the furnisher and mechanically accepting whatever the furnisher reports back. This is not a reasonable investigation. It is a perfunctory data match that does nothing to evaluate the merits of a consumer's disputes. Courts have repeatedly condemned this practice. See, e.g., Robertson v. J.C. Penney Co., 2008 WL 623397, at *8 (S.D. Miss. Mar. 4, 2008) (finding no investigation conducted at all); Scharf v. Trans Union, LLC, 2015 WL 6387501 (E.D. Mich. Oct. 22, 2015) (granting summary judgment to consumer where furnisher merely reviewed its file for default status); Marchisio v. Carrington Mortg. Servs., LLC, 919 F.3d 1288, 1303 (11th Cir. 2019) (condemning furnisher's failure to correct databases in advance of predictable dispute outcome).

35. First Bank, similarly, appears to have done nothing more than check only limited records, if that. By limiting its investigation and ignoring the documentation Mr. Wartell provided,

First Bank failed to conduct the reasonable investigation the FCRA demands.

36. No legitimate investigation could have reviewed Mr. Wartell's dispute letter and attachments and concluded that the reporting was accurate. Either the Defendants did not read the documentation Mr. Wartell submitted, or they read it and disregarded it. Either way, they violated the FCRA.

37. Had either Defendant conducted a genuine reinvestigation — reviewing the documents included with Mr. Wartell's disputes or examining the history of this lease — the First Bank account would have been deleted. It was not.

38. Defendants failed to maintain or follow adequate policies and procedures designed to ensure the accuracy of consumer credit information as required by the FCRA. They knew, or reasonably should have known, that their conduct violated federal law, yet they took no corrective action.

39. Defendants could have taken the steps necessary to bring their agents' actions within compliance of the statutes but neglected to do so and failed to adequately review those actions to ensure compliance with said laws.

40. The inaccurate information reported by Defendants has been made available to prospective and existing creditors and has materially harmed Mr. Wartell's ability to access credit, his creditworthiness, and denied Mr. Wartell credit opportunities, both known and unknown.

41. Beyond the financial harm, Mr. Wartell has suffered significant and ongoing emotional and psychological injury. He takes pride in maintaining his financial health, and the knowledge that a debt he is not financially responsible for — continues to appear on his credit reports as a current delinquency has caused him profound distress. Mr. Wartell has experienced emotional anguish, sleep loss, anxiety, frustration, anger, humiliation, embarrassment, and a sense

of powerlessness in the face of Defendants' intransigence.

42. These violations of the FCRA are the proximate cause and substantially related to Mr. Wartell's damages.

**Count One – Violations of the FCRA**
**Plaintiff v. Equifax**

43. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

44. At all times pertinent hereto, Equifax was a "person" and a "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

45. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

46. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

47. The CRA Defendant has violated numerous provisions of the FCRA for its improper actions, including but not limited to Sections 1681e(b) and 1681i(a) of the FCRA. Among other things, Equifax reinserted the previously deleted First Bank account into Plaintiff's file without obtaining the furnisher certification and without providing Plaintiff the written notice required by Section 1681i(a)(5)(B), and, after receiving Plaintiff's disputes, continued to report the First Bank account without noting that it was disputed. Defendant willfully and negligently violated the FCRA and is liable for damages to Plaintiff pursuant to Section 1681n and 1681o of the FCRA.

48. The conduct of Defendant was a direct and proximate cause, as well as a substantial factor, in bringing about the actual damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendant is liable to Plaintiff for the full amount of statutory, actual and

punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

**<u>Count Two – Violations of the FCRA</u>**
**Plaintiff v. First Bank**

49. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

50. At all times pertinent hereto, First Bank was a "person" as that term is defined by 15 U.S.C. § 1681a(b).

51. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

52. First Bank violated Section 1681s-2(b) of the FCRA by engaging in the following conduct:

a. willfully and negligently failing to conduct a reasonable investigation of the inaccurate information that Plaintiff disputed;

b. willfully and negligently failing to review all relevant information concerning Plaintiff's inaccurately reported trade line;

c. willfully and negligently failing to report the results of investigations to the relevant CRAs;

d. willfully and negligently continuing to furnish and disseminate inaccurate, unlawful and derogatory credit account and other information concerning Plaintiff to credit reporting agencies and other entities; and

e. willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. §1681s-2(b)

53. The Defendant has violated numerous provisions of the FCRA for its improper

actions, including but not limited to Section 1681s-2(b) of the FCRA. Defendant willfully and negligently violated the FCRA and is liable for damages to Plaintiff pursuant to Section 1681n and 1681o of the FCRA.

54. The conduct of First Bank was a direct and proximate cause, as well as a substantial factor in bringing about the serious injuries, actual damages and harm to Plaintiff that are outlined more fully above. As a result, Defendant is liable to Plaintiff for the full amount of statutory, actual, and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

**Count Three – Breach of Contract**
**Plaintiff v. First Bank**

55. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

56. The Agreement is a valid and enforceable contract between Plaintiff and First Bank and is governed by Pennsylvania law. Plaintiff performed his obligations under the Agreement, including causing his claims against First Bank in the prior action to be dismissed.

57. In the Agreement, First Bank agreed to, among other things, notify Experian, Equifax and Trans Union so that the First Bank account would be deleted and no longer reported in connection with Plaintiff's credit report.

58. First Bank breached the Agreement by furnishing, re-reporting and/or verifying the First Bank account to Equifax in 2026, after the account had been deleted, causing the account to be reinserted and reported again on Plaintiff's Equifax credit report.

59. Plaintiff provided First Bank with written notice of the reinsertion and verification of the First Bank account in the manner provided for in the Agreement and afforded First Bank thirty (30) days to take corrective action. First Bank failed to cure its breach within that period.

60. All conditions precedent to First Bank's obligations under the Agreement and to this action have been performed, have occurred, or have been waived or excused.

61. As a direct and proximate result of First Bank's breach, Plaintiff has suffered damages, including harm to his creditworthiness and credit opportunities. Plaintiff is entitled to compensatory damages and to specific performance directing First Bank to cause the First Bank account to be deleted and no longer reported.

## JURY TRIAL DEMAND

62. Plaintiff demands trial by jury on all issues so triable

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendants, based on the following requested relief:

a. Actual damages;

b. Statutory damages;

c. Punitive damages;

d. Specific performance directing First Bank to cause the First Bank account to be deleted and no longer reported in connection with Plaintiff's credit reports;

e. Costs and reasonable attorneys' fees; and

f. Such other relief as may be necessary, just and proper.

**THE KIM LAW FIRM, LLC**

BY: */s/ Richard H. Kim*
Richard Kim, Esquire
1515 Market St., Suite 1200
Philadelphia, PA 19102
Ph. 855-996-6342/Fax 855-235-5855
rkim@thekimlawfirmllc.com

*Attorney for Plaintiff David Rolan Wartell*

Date: October 20, 2026